Case number 15-2136. David L. Gavitt v. Bruce Born, personal representative for the estate of John E. Argument not to exceed 15 minutes per side. Mr. Frelick, you may proceed for the appellant. Good morning, Your Honors. Good morning. Joe Frelick, appearing on behalf of the estate of John DeVries. I'd like to reserve two minutes, Your Honor. All right. The facts established by David Gavitt in state court to obtain his release from prison preclude his federal claims. This isn't an appeal that's based on disputed facts. The only facts that we're talking about here today are the facts alleged in Gavitt's complaint and the facts established by his attorneys and his experts in state court. Gavitt's attorneys made representations and his experts made sworn statements and affidavits that John DeVries made a mistake in interpreting the gas chromatographs and that he misunderstood fire behavior when he conducted his flame spread test. Gavitt's primary expert, John Lentini, a world-renowned fire expert, stated in sworn testimony that DeVries' analysis of the gas chromatographs was flawed. And repeatedly, his attorneys, in their motion for relief from judgment, stated that DeVries botched the test. There's not one statement, basis, or even insinuation anywhere in the state court filings that even tend to indicate that John DeVries acted with the intent to deceive. Is that a factual issue? It's not, Your Honor. Whether he did something is not a factual issue? Well, it's not because we know that he was wrong. We know that he was wrong. I'm not saying how well the factual issue was decided. It's an issue of fact, right? I mean, whether he did X doesn't sound like something we can find in the law books. It sounds like something we would find from witnesses. Yes, I agree that it is a fact issue. If it's a fact issue and the district court was incorrect in resolving that fact issue, as you're arguing, how do we have jurisdiction over that under Johnson v. Jones? This is an interlocutory appeal, is that correct? It is, Your Honor. So if it's a fact issue and the district court was wrong, the answer is to wait until it's final and then appeal it rather than appeal it interlocutorily, according to Johnson v. Jones and Romo and cases that have followed that. That's my question. Your Honor, I think the difference here is it was a legal mistake for the judge not to find that DeVries' conduct was established as a mistake and that the only interpretation or finding that could be made based on Gavitt's representations was mistake. It could only be one of two things. I'm not sure I follow that. I'm sorry. Well, everyone agrees that DeVries was wrong about the gas chromatograph. I understand that. The question is why he was wrong, and it can only be one of two things. Either he was intentionally deceiving or he made a mistake. Those are factual differences. My point is that the state court record establishes beyond debate that it was a mistake. So this is sort of under the exception to Johnson v. Jones, it's like a videotape, which makes it unanswerable. Is that your argument? It's like a Scott v. Harris type situation. Scott v. Harris. Is that kind of your argument here? It is, Your Honor. It's like Scott v. Harris. It's also like an estoppel. It's a previous position taken by Mr. DeVries that he succeeded on, and now he's changing his position. Let me see if we could frame this a slightly different way, and you tell me whether this works or doesn't work. We have to look at the complaint, obviously, to see what the allegations actually are and whether they involve factual disputes. It seems to me we're talking about paragraph 51 of the complaint where it says, DeVries either intentionally or with deliberate indifference and or reckless disregard for the truth, so on and so forth. So he's pled something that would normally survive an interlocutory appeal, provided there is some sort of factual basis for that. So doesn't it become more a pleadings question? Does he have any facts other than pure conjecture that would satisfy, that would get by Twombly, that whatever DeVries did was done intentionally or with deliberate indifference? I agree with what you said, Your Honor. So if there are some facts they point to that they know or believe discovery will show, then it seems to me we don't have jurisdiction. Does that make sense? But going one step further from what you're saying, I agree that what you write is a conclusion, and that has to be supported by facts. And if they pled facts that support that conclusion, that would be adequate to state a claim. But the situation we have here is we can't just look at the facts he's pled. We have to look at the state court records, too. I don't think that's a controversial position. I don't think it's controversial to say that we have to look at the state court record, and if the state court record utterly contradicts whatever facts he's pled in his complaint, we have to go with what the state court record says. And the state court record... Well, let me test you on that, because paragraph 42 of the complaint says that DeVries knew that the laboratory experienced false positives and other things. Now, that's as of December 1985. Is that before or after the conviction? That would have been before, Your Honor. Okay. So he's pled that DeVries knew the laboratory he was using had false positives, and in paragraph 43, the protocols were deficient. So what was said to get him out of jail in the state court doesn't address that one way or the other, does it? Well, it addresses the fact that it doesn't say that he got a false positive because of some laboratory problem. In that sense, it was more that he used improper techniques in conducting his analysis. So let's assume he used improper techniques, and let's assume that he made mistakes, and let's also assume that that was consistent with arson investigative techniques at the time, which you point out his own experts say. Yes. But isn't that different, subtly perhaps, than the question of whether he knew that the lab results were false at the time? Well, and I guess that's the point that I'm making is he couldn't have known because it was a mistake, because he thought that he really had found gasoline, and that's based on his flawed methodology and improper technique. That's the way I read, I think it's the only way you can read his experts' affidavit in the context of what he's saying in his motion for relief from judgment. I mean, over and over again, they talk about botched testing, misread results, incorrect technique. They're not talking about some institutional problem at the lab. They're talking about Mr. DeVries having a misunderstanding of what he's doing. Actually, paragraph 42 says that he knew that any MSP laboratory which relied on a single analytic technique will experience false positives. So if there is some factual basis for that, even though he made a mistake, doesn't that get him by at least a Rule 12? I don't think it does, Your Honor, especially in light of the fact that we'll never be able to discover what John DeVries knew because he's been dead for 20 years. He died 20 years before this complaint was written. If they have a witness that says that he sat down and had a conversation with DeVries and had explained in advance that any MSP lab which relies on a single analytic technique will experience false positives, then does that cast us, if that was true, does that cast us in a different light? It does not, Your Honor, because we're not talking about all the false positives at the MSP lab. We're talking about this particular false positive. And this particular false positive is the one that's alleged to have harmed David Gavitt. And his experts in his motion for relief from judgment say that this particular false positive was the result of a mistake. So that's the false positive that's important. Even if there was some institutional problem at the lab that was generating false positives in other cases, what does that have to do with David Gavitt? Am I right that it loops back to ask him what evidence he has to support the allegations in the complaint that relate specifically to your client? Right, and this particular false positive. And when we look at the evidence we do have, what his attorneys represented and what his experts said, clearly it was a mistake. And like I was saying, it had to be one of two things. Everyone agrees that he was wrong. It's why was he wrong. Did he intend to deceive or did he make a mistake? And all the words they use are botched, flawed, improper technique, that he misread the results. So you look up these words in Merriam-Webster. These words all connote some level of negligence or mistake. That's what he said in state court. Now he's saying he fabricated and misrepresented evidence. Those words mean that he made a misrepresentation with the intent to deceive. They're completely at odds. They're in contradiction. And to resolve that conflict, we look to the sworn statements of his experts in affidavits and the state court record. Still, in order to do that within our jurisdiction, we have to be under Scott Vieiras, has to be plain and unanswerable, right? That's one theory, Your Honor. I think another. How do you get any other theory? Judicial estoppel. It's a previous position taken by Mr. Gavitt that he succeeded on. He took this position. Do you have cases that say that that can be done at the appellate level on an interlocutory basis with respect to factual issues? The closest case that I can think of. It seems like under the theory of Johnson P. Jones that you would wait on that until the case was final. I think if the facts are incapable of dispute. Well, then we're back to Scott Vieiras. Right. You really have to do it under Scott Vieiras in order to rule for you. Is that correct? Is there an intermediate ground here, though? Let's assume that they get by on a motion under Rule 12. And even though we're supposed to determine interlocutory appeals on qualified immunity up front, there is a scenario where you get by 12 but you don't get by Rule 56 because you simply don't have any evidence. Then you'd still get qualified immunity, I'll bet, later before trial. Am I right about that? I think you are, Judge McKeague. And Judge Rogers, I think to answer your question, the difference, the sort of maybe middle ground or different area than Scott Vieiras is the idea that when we look at a complaint and we're examining it under Rule 12, that we look at documents that are referenced in the complaint and public records that refute a plaintiff's claims. In a sense, that's a legal issue. I understand that. There's a sense that's a legal issue. But really, in Johnson v. Jones, whether you have enough evidence to establish a genuine issue of material fact is in sense a legal issue. It's a legal issue about facts. Right. And that's why I'm saying this is different, but it looks similar in the sense that it's a legal issue about facts. Right. If it's a legal issue about facts, then the Supreme Court seems to say the facts have to be blatant under the record. And I understand the argument, and I think it makes a certain amount of sense, or at least coherent, to say this is just clear, open and shut, in the same way that a videotape is open and shut. But it's not a videotape, so it's not exactly the same thing. Do you have any cases that use Scott for something other than videotapes instead? I don't. I wasn't able to. It doesn't seem like the same thing. Do you see what I'm saying? I understand what you mean. But I guess when we look at the language of Scott, it talks about evidence that's capable of only one interpretation. And I think that's what we have here. I understand your position. Thank you, Your Honor. I understand your pause, but I think when we look at Scott and we look at Rule 12 and we look at these documents that are central to the complaint, and it is a legal issue about facts, it's not a pure issue of fact in the sense that one person is saying. Oh, I understand that. Thank you, Your Honor. So I'm almost out of time. I'm happy to answer any other questions, or try to. Apparently there are none. Thank you, Your Honors. Good morning, Your Honors. Christopher Desmond on behalf of the Plaintiff Appellant or, I apologize, in this instance, the Plaintiff Appellee, David Gavitt. Your Honors, I want to start today. I appreciate the conversation about jurisdiction, and I agree with the general notion, and I'm not saying that the Court has necessarily concluded this at this moment, but the general notion that there isn't jurisdiction over the issues presented in this interlocutory appeal because of the factual nature of those issues. But I also want to address from a procedural standpoint what I argue in my brief, which is the fact that we're also dealing with a waiver situation, which wasn't addressed during Brother Counsel's argument, in that the argument that has been presented in the briefing today by Mr. DeVries as a State is not the same argument that was presented below. The argument that was presented below was a very distinct argument that was based on the notion that Mr. DeVries was entitled to absolute witness immunity in relation to the claims that were brought by Mr. Gavitt because they presented the argument very similar to the argument that was rejected in the opinion authored by Judge Clay in the Gregory v. Louisville case that because Mr. DeVries ultimately testified at the criminal proceeding that resulted in this conviction that he was entitled to absolute immunity. And as you know, Judge Clay in Gregory, you explained that pre-trial activities that take place by those investigators are not subject to such immunity. That was the issue that was decided by the trial court below. Then, after the trial court decided that issue, the trial court addressed only whether or not Mr. DeVries' alleged conduct in relation to these facts was reasonable. Those are not the issues that were presented in the briefing to this Court. The issues that were presented in the briefing on appeal were whether or not there was a clearly established constitutional right implicated by the allegations in the complaint. Again, never addressed by, well, I won't say never addressed, never argued to Judge Edmonds. And in fact, Judge Edmonds' opinion specifically states that the issue of whether there was a clearly established right has not been contested by the defendant in this motion. She wouldn't be talking about a clearly established right unless she was dealing with qualified immunity, would she? I apologize, one more time, Your Honor? I took you to be arguing that the only issue below was absolute immunity and not qualified immunity. They argued absolute immunity initially, and then they argued in the alternative, qualified immunity. When she's talking about a clearly established rule of law, she's talking about qualified immunity. She is, correct. Qualified immunity, so it was raised below. Well, Your Honor, respectfully, so there's two prongs to the qualified immunity analysis, whether there's a clearly established right and whether the conduct of a particular defendant violated that clearly established right. Exactly. But both of those, I assume, are under the, I mean, I read her opinion, but there were a lot of opinions. Yeah. Both of those are under the rubric of qualified immunity, right? Step one is step two of qualified immunity, so she must have had it addressed to her or she wouldn't have resolved it. No, Your Honor, what she specifically stated was that in their qualified immunity analysis, they were not contesting that there was a clearly established constitutional right at issue, that instead all they were contesting was whether or not that right was violated by this particular conduct. Did she deny qualified immunity? She did deny qualified immunity, Your Honor. Qualified immunity was raised. That's the whole appeal, the denial of qualified immunity. The denial of qualified immunity is the appeal, but it's not on the basis that's been presented to this court. And what I would point the court to is to Can you point to the other, that's where I'm confused, and maybe it will be clearer, it will be persuasive. Right now I'm confused. If it was argued, absolute immunity, step one, in the alternative qualified immunity, and qualified immunity has two steps, and all of that is argued to Judge Edmonds, and Judge Edmonds rules on absolute immunity and then rules on step one, step two of qualified immunity, how can you come and say that the argument raised about qualified immunity wasn't raised because it was all in the context of absolute immunity, then I'm lost. It's a very different argument that was made regarding qualified immunity, Your Honor. How was it different? Can you say how it was different without going back to absolute immunity, which she's passed, I guess? Yes, what I'd say is that when they argued qualified immunity below, they never argued that the notion of fabricating or misrepresenting evidence is not a clearly established constitutional right, that there's not a clearly established constitutional right to be free from that conduct. That's not the argument that they made below. That's the argument that they're only making here. Similarly, we addressed in our briefing a recent opinion from this court. They were arguing that it's clear as a factual matter. It's legally unquestionable as a factual matter that he didn't do these things. That is what they argued. It's different from whether it's clearly established violation if he did do them. Exactly, Your Honor. What they argued below is it's clear that he did not do these things. What they're arguing in their- It appears to me now that's what he's arguing now. That's what was argued during the course of oral argument, but if you look at the briefing, Your Honor, that was presented in court- Well, I am arguing to a degree that there was an inconsistent argument presented with the brief. What I've spelled out in my brief, Your Honor, is that the argument that was presented in their brief was not presented below and that there's recent case law from this court within weeks of the briefing of this case. There's recent case law from this court that explains that even if you present one qualified immunity argument below  that argument can't be considered on appeal. You're also suggesting it sounds like in his oral argument he is complying with- Well, yes. In his oral argument, he appears to be resurrecting- So it comes down to he's arguing something orally, which is the proper argument according to you. He just hasn't raised it in his brief. Yeah. Is that the argument? Yes, Your Honor. I believe we're dealing with- Let's read his brief and see what he said. Go ahead. I believe- Yes, Your Honor. With that regard, I believe that we're dealing with a little bit of a waiver issue. Regardless of whether or not we are dealing with a waiver issue regarding the distinction between the qualified immunity arguments, I think that the questioning of the panel during Brother Counsel's argument is accurate in terms of the notion that what we're dealing with here is a very fact-specific question. I understand- I'm looking at his argument. He says DeVries is entitled to qualified immunity because the state court record underlying the action establishes that DeVries did not act in an unconstitutionally arbitrary or shocking manner and didn't clearly establish constitutional rights. How is that different from what he's arguing today? You're right, Your Honor. The third portion of his argument was that the shocks the conscience standard applies. He argued that the reason why the shocks the conscience standard applies, because of portion two of their argument, is that there's no amendment that provides an explicit textual source of constitutional protection against the alleged conduct in this case. On appeal, he's only arguing the legal second step of qualified immunity, whereas orally he's arguing the factual first step. That appears to me what's occurred, Your Honor. All right. Thank you. Regarding the factual question- Desmond. Yes. We don't spend our entire time talking about whether there's been a waiver here. It does seem to me that to make any practical sense for this case to go forward, there's got to be some basis for the allegations that you have in the complaint. And the state's argument is, well, geez, those arguments are inconsistent with what you said in the state court case. So I understand that position. But what facts do you have or anticipate being able to get in discovery that support these allegations in the complaint that rise to something above a mistake or a change in arson investigation science? Yeah. So I want to be very clear about that, Your Honor. This is one of the portions of the case where we do not have this specter hovering above us of an idea of a change in arson science. The individuals who were involved in Mr. Gavitt's release from prison, all the experts who were involved, they noted that the same testing that's being used today for gas chromatography, that's the same testing that was being used in 1985 and 1986 when these criminal proceedings were taking place. I thought that the experts said that the sophistication of reading the gas chromographer, however you say that word, had changed significantly. They did talk about notions of sophistication, but in terms of the equipment that's used and the results that are produced, my understanding is that they are identical today as to what they were in 1985. And I believe the states... Before we spend a lot of time on that, let's just assume that that's true. It's the same science, same equipment. Everybody seems to agree he made a mistake in how he read the machine. Now the question is whether there's something more to it, whether he knew he was making a mistake. He knew the machine was inadequate. He knew there were false positives that many should have done another test. Those are all the various things that you say. So what sort of factual basis do you have for any of this stuff you said in the complaint? I think part of it, Your Honor, is understanding what a gas chromatography test actually looks like in terms of the results that are produced. Gas chromatography isn't an art. It's a situation where a graph is produced, there are lines on the graph, there are peaks and valleys, those lines represent different types of chemicals. There's a line that you look at. If that line rises to a certain level, it means there is an accelerant. If it does not rise to that level, it means there is not an accelerant. It either is or it is not. Did he hide those papers? Did he hide the graph? Did he hide the lines? Did everybody know what they were and he just drew a conclusion that you say is wrong? What he did was he produced the graphs during the course of his testing. Then he wrote a report that described the graphs. We've referenced in our briefing, we've referenced letters from Mr. Gabbitt's defense counsel during the criminal proceedings that he wrote to Mr. Gabbry, who was the prosecutor, requesting all graphs, and he wasn't given the graphs that Mr. DeVries produced during the gas chromatography testing. How is DeVries responsible for that if the prosecutor didn't give it to him? Oh, no, no, no. I'm not saying that Mr. DeVries is responsible for that, although I don't know if Mr. DeVries did give it to Mr. Gabbry or not. But what I'm saying, Your Honor, is that those graphs that clearly established that there was not gasoline, our contention is that under science and clearly established principles of science, there will be an expert that will testify. If we can simply get to the point of discovery, there will be an expert who will testify that no reasonable individual who was engaged in this scientific process as a career could have looked at this graph and simply made a mistake and said that there was accelerant on this carpet. That for someone to make that assertion, it's such a patently false assertion that it must evidence some form of intent or malice on the part of that individual. Did your state court experts trying to get him released deal with DeVries' role in this, too, or only the two MSP detectives? They referenced DeVries. They referenced Kelman and Fachet. And I don't see any snippets that they say or even intimate that DeVries did anything other than make a mistake. So where would I go to find that? Well, Your Honor, you wouldn't see that in the record at this point because that's not the showing that they had to make in the criminal proceedings. And, Your Honor, as someone who's had some involvement on some of these exoneration proceedings, not necessarily in Mr. Gavitt's case but in other cases, there's always sort of an instance where you're towing the line because you're dealing with sensitive issues where prosecutors have made decisions, the state has proceeded in a certain way, and people on both sides are trying to find that middle ground that achieves the result of getting this person out of prison without necessarily making allegations, without necessarily reaching conclusions in those papers. So essentially you're saying that either the experts that didn't get to that in the state case or new experts are going to say no qualified expert would read the graph the way he did, so therefore he was intentionally disassembling. Correct, Your Honor, and then I think that we'll be able to... I think that answers his question. Okay, and I just want to assert as well, Your Honor, that I think that we'll be able to bolster that testimony through, or those opinions, through deposition testimony of the various people who were involved in this process. I know that Mr. DeVries isn't living anymore, unfortunately, but he wasn't working in a vacuum. Is there any statute of limitations problem on this? No, we don't have a statute of limitations problem, Your Honor. This was a timely filed cause of action, timely filed 1983 cause of action. They've made some procedural arguments that aren't in front of the court today regarding our ability to proceed against the estate. Judge Edmonds has already ruled on that and ruled that we could properly present claims against the estate, and that's not an issue that's before the court. And similarly, Your Honor, to a question, Judge McKee, that you had asked Brother Counsel, there is certainly an opportunity for them to renew a motion, or renew an appeal, or renew a motion, dispositive motion for summary judgment on the basis of qualified immunity after discovery. We're not saying at this point, we're not moving for summary judgment, we're not saying that we're entitled to a finding of liability against the DeVries estate. We're simply saying that under Iqbal, under Twombly, under all the relevant cases regarding the pleading standards, we've pled a viable cause of action against the estate, and now the next step in the process is to proceed with discovery. Let's take depositions, let's talk to experts, let's find out whether or not our allegations can be fleshed out during that discovery process. If they can't be, I know we'll face the same thing that we face in every 1983 case I work on, which is a summary judgment motion. And then at that point, we'll deal with the merits of our factual allegations, and the quality of our case, and the quality of our discovery process, and whether or not we've been able to flesh out what we've alleged in our complaint. But at this point, I think as Judge Edmonds has correctly recognized, we've very clearly pled that he intentionally fabricated or misrepresented evidence, and that it was that fabrication that led to the arrest, imprisonment, and conviction of David Gavitt. That is a viable cause of action under federal law, and I don't think anything else is needed for us to proceed past that stage. You're certainly more definitive here in oral argument than you were in your briefs, as far as what evidence you have, or know you're going to get, or whatever. Your briefs seem to say you want to ask the people, the living people, what happened, and maybe you'll find something that's helpful. That's a rough paraphrase. But is that enough? Well, Your Honor, I think that one of the reasons perhaps, and maybe this is a failing in my briefing, and I apologize if it is, one of the reasons that I don't make bold assertions in my briefing regarding what the evidence is, is because that evidence hasn't been developed yet. I feel like that's what the other side is doing. The other side is asserting this is. You can't just rely upon conjecture as to what the evidence would be. Correct. You've explained to us what you say an expert is going to say, and assuming that that's true, that's pretty persuasive. But it's not in the briefs. I apologize for that, Your Honor. I know this was the argument that was presented below. I was the individual who handled the summary judgment arguments below in regard to all these motions, and I know that's the way that it was presented to the trial court. I would assume that it was something that was in my briefing below, and I apologize if it wasn't in my briefing to this court. I don't know if it was perhaps in the other brief that I provided to this court in the next case that we're going to hear. Well, that's helpful. So if we go look at your briefs below, regardless of any potential deficiency here, you told Edmonds what you believe the evidence is going to show that supports this is more than a mistake. I certainly believe I did, Your Honor. I'll look. We'll look. We're dealing with a year and a half ago, but I think between the hearing and the briefs, that was a statement that was made to her at some point. That's helpful. Thank you. Thank you, Your Honors. I belabor your earlier argument a little bit more, but not too much more. I'm looking now at the blue brief. This is the brief of counsel who now argues Scott v. Harris, and it's clear he doesn't even cite Scott v. Harris. And if you look at the portion that you were reading to me, the argument in the outline does seem not to mention the kinds of things that he's arguing here. But if you look in the statement of issues presented, it says that Gavitt's factual allegations in his complaint are directly contradicted by the indisputable public records of the Michigan court. And that theme is not left there, but is repeatedly made, albeit under a heading that seems to be talking about something else. It says the problem for Gavitt is that the public record of the state court action underlying the case demonstrates that the actions are not so egregious to shock the conscience. They show at worst it was a mistake. So they're referring to those records and saying you're bound by them. You look over here on page 20 and 21 of their briefs, and they make that argument in greater detail. Then when your brief comes down, and the question is whether this court has jurisdiction, it's a little bit hard for me to tell whether you're arguing that this court has jurisdiction or not. It just says you note that an interlocutory appeal only vests this court with jurisdiction, and that's not the case here. Is that an argument that there's no jurisdiction? Do you accept that we have jurisdiction in this case? I don't accept that, Your Honor. So you're making the argument, which is kind of made in your red brief, that there's no jurisdiction, and then in their reply brief, they very explicitly make the argument without citing Scott, but they make a Scott type of argument in page one of their reply brief. It could have been clearer, there's no doubt about it, but it is addressing the guts of the argument that he's making here today, isn't it? Yes, it is addressing the guts of the argument he's making today, but I think as you recognized during your questioning, Your Honor, much of the argument he's making today is a fact-based argument. That's not the proper subject of it. He says it falls under the Scott kind of argument, and that would be a little bit unprecedented but not inconsistent with Scott. I understand. Thank you, Your Honor. I appreciate the time. Thank you. Your Honor, I just wanted to give you a few page ID numbers. 542 to 549 is where his attorneys are talking about DeVries' involvement in the state court case, and 719 to 725 is where their expert, John Lantini, goes straight like talking about the mistake that DeVries made. The bottom line here is in 1980, it was not the same with gas chromatography. There was no formal standard for interpreting these. The standards evolved considerably during the 1990s. And in terms of if I was not as artful as I should have been or could have been, I apologize. I think I've clarified my argument today. It's what we talked about on my direct argument. Judge Edgman says that before Judge Edgman's, he made it very clear that he wasn't limited by what the state experts said and that he's got people or anticipates he's going to have people that will flesh this out. Is that true? Is that what happened below or isn't it? I don't recall that, Judge McKeague. I don't recall any, and I've never seen it in writing, any affidavit that this evidence will be presented. The only affidavits or evidence that I've seen is the evidence that I've talked about today. John Lentini, the statements of his lawyers in the motion for relief from judgment. Well, you don't have to have an affidavit. This is Rule 12. But when put to the test, it seems to me you do have to have some basis for your factual assertions to get up beyond Twombly. And he seems to say that that is provided maybe not on these briefs, in the Edgman's briefs. And you don't think so, but you're not sure. I'm not sure, Your Honor. I don't want to say one or the other. And just to address your point, Judge Rogers, on page ID 12 in this court, I cited a case, Bishop v. Hackel, that says this court can determine that the trial court's determination that the facts are subject to reasonable dispute is false. Interlocutory appeals are permitted where the plaintiff's version of the facts is utterly discredited by the record as to be rendered a visible fiction. Chapel v. City of Glee. You're reading out of your brief now? Yes. Page ID 12. Thank you, Your Honors. All right. Unless you have any other questions. Can I ask just one question that doesn't have anything to do with the merits of this case? How does he recover against this estate that was closed 25 years ago? Is the anticipation here that the state then will indemnify the state for any judgment against the estate or something? I assume that that's their hope, Your Honor. But if they don't, I assume that's discretionary, isn't it, on the state's part? It is. So why would the state do that unless to protect assets of the estate, which I assume have been long distributed? There was no estate until 2014 when plaintiffs came. I'm just trying to figure out why are you fighting over this estate if you know? Well, it's what you identified initially. Their hope, I assume, is that if they obtain a judgment, that the state would indemnify the estate or that the state would indemnify the estate. Is that right? That's generally correct, Your Honor. Okay, thank you. Thank you, Your Honors. All right, the case is submitted, and the clerk may call the next case.